IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| CLARENCE L.,[1]<br><br>      Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,[2]<br><br>      Defendant. | Case No. 3:17-cv-00741-AA<br>**OPINION AND ORDER** |

AIKEN, Judge:

Plaintiff Clarence L. brings this action pursuant to the Social Security Act ("Act"), 42 U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner"). The Commissioner previously denied plaintiff's applications for

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

[2] Nancy A. Berryhill's term as the Acting Commissioner of the Social Security Administration (SSA) ended on November 17, 2017, and a new Commissioner has not been appointed. The official title of the head of the SSA is the "Commissioner of Social Security." 42 U.S.C. § 902(a)(1). A "public officer who sues or is sued in an official capacity may be designated by official title rather than by name." Fed. R. Civ. P. 17(d). This Court, therefore, refers to defendant only as Commissioner of Social Security.

Page 1 – OPINION AND ORDER

Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"). For the reasons set forth below, the Commissioner's decision is affirmed.

## BACKGROUND

On May 7, 2013, plaintiff applied for DIB and SSI, alleging disability beginning February 5, 2013, due to a shattered femur in the left leg caused by a gunshot wound, anxiety, and nerve pain. His claims were denied initially on September 23, 2013, and on reconsideration on April 30, 2014. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"). An administrative hearing was held on September 30, 2015, where plaintiff was represented by counsel. Plaintiff and a Vocational Expert ("VE") testified at the hearing. The ALJ found plaintiff not disabled under the Act in a written decision issued November 02, 2015. After the Appeals Council denied review, plaintiff filed the present complaint in this Court.

## STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based upon proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Berry v. Astrue*, 622 F.3d 1228, 1231 (9th Cir. 2010). "Substantial evidence is more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Gutierrez v. Comm'r Soc. Sec.*, 740 F.3d 519, 522 (9th Cir. 2014) (citation and quotation marks omitted). The court must weigh "both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001). If the evidence is subject to more than one interpretation but the Commissioner's decision is rational, the Commissioner must be affirmed, because "the court may not substitute its judgment for that of the Commissioner." *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001).

## COMMISSIONER'S DECISION

The initial burden of proof rests upon the plaintiff to establish disability. *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986). To meet this burden, the plaintiff must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A).

The Commissioner has established a five-step sequential process for determining whether a person is disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4); *id.* § 416.920(a)(4). At step one, the ALJ found plaintiff had not engaged in "substantial gainful activity" since February 5, 2013, the alleged disability onset date. Tr. 24; 20 C.F.R. §§ 404.1520(a)(4)(i), (b); *id.* §§ 416.920(a)(4)(i), (b). At step two, the ALJ found plaintiff had the following severe impairments: "degenerative disc disease, right knee osteoarthritis and meniscal tear, left femur fracture status post reconstructive surgery, affective disorder, anxiety disorder, and alcohol abuse." Tr. 24; 20 C.F.R. §§ 404.1520(a)(4)(ii), (c); *id.* §§ 416.920(a)(4)(ii), (c). At step three, the ALJ determined plaintiff's impairments, whether considered singly or collectively, did not meet or equal "one of the listed impairments" that the Commissioner acknowledges are so severe as to preclude substantial gainful activity. Tr. 24-25; 20 C.F.R. §§ 404.1520(a)(4)(iii), (d); *id.* §§ 416.920(a)(4)(iii), (d).

The ALJ then assessed plaintiff's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e); *id.* § 416.920(e). In addition to other limitations not relevant to this appeal, the ALJ found plaintiff was able to

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can frequently push, pull, and operate foot control with his left lower extremity. He can frequently crawl, crouch, stoop, balance, and climb ramps and stairs . . . occasionally climb ladders, ropes, and scaffolds . . . [but] is limited to performing

simple, routine tasks and making simple work-related decisions. He is limited to
frequent interactions with supervisors, coworkers, and the public

Tr. 26. At step four, the ALJ concluded plaintiff could not perform any of his past relevant work. Tr. 33; 20 C.F.R. §§ 404.1520(a)(4)(iv), (f). At step five, however, the ALJ found that plaintiff could perform work existing in the national economy; specifically, plaintiff could work as a mail room sorter, routing clerk, or agricultural produce sorter. Tr. 34; 20 C.F.R. §§ 404.1520(a)(4)(v), (g)(1). Accordingly, the ALJ found plaintiff not disabled and denied his applications for benefits.

## DISCUSSION

Plaintiff contends in this Court that the ALJ committed harmful error in failing to further develop the record and obtain new expert opinions regarding plaintiff's physical and mental limitations and in the RFC assessment.

I begin with plaintiff's argument that the ALJ failed to fully and fairly develop the record by obtaining an updated opinion of his physical and mental functioning. "The ALJ in a social security case has an independent 'duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)). The ALJ's duty to develop the record applies whether or not a plaintiff was represented by counsel. *Tonapetyan*, 424 F.3d at 1150. The ALJ's duty to develop the record is triggered when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001)). The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record. *Tonapetyan*, 424 F.3d at 1150

Page 4 – OPINION AND ORDER

Regarding plaintiff's physical limitations, plaintiff complains that while ALJ accorded significant weight to the state agency medical consultants, these were performed prior to the medical record being supplemented with information regarding plaintiff's degenerative disc disease and osteoarthritis of the knee with meniscal tear, both of which the ALJ found to be severe. Plaintiff contends that the ALJ should have ordered a consultative examination or asked a medical expert to testify at the hearing to fully develop the record.

Plaintiff points out that he was not diagnosed with osteoarthritis and meniscal tear until late 2014, and he underwent surgery in December of 2014. Further, MRIs of hiss lumbar, cervical, and thoracic spines were dated April and May of 2015. While these events occurred after the agency reports, the record reveals that the ALJ discussed numerous treatment records and reports, including those from the alleged onset of date of disability in February 2012 to within one month of the of the her October 2015 decision. These included the records that were not examined by the state agency medical consultants. The Commissioner rightly points out that the ALJ is "responsible for translating and incorporating clinical findings into a succinct RFC." *Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1006 (9th Cir. 2015) Here it is clear that the ALJ examined these medical records and considered them in plaintiffs disability determination. Indeed, it is not uncommon that there will be some time lapse between the agency consultants' report and the ALJ's hearing and decision. "The Social Security regulations impose no limit on how much time pass between a report and the ALJ's decision in reliance on it." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3rd Cir. 2011).

The ALJ found that plaintiff's impairments were severe "because they cause more than minimal vocational limitations for the claimant." Tr. 24. The ALJ further cited other symptoms in plaintiff's medical treatment records, including a right-hand fracture. *Id.* However, the ALJ

asserted that there was "nothing to show that these non-severe impairments are of such severity as to cause more than minimal vocational limitations." *Id.*

The ALJ cited several specific examples of plaintiff impairments. Tr. 25. First, the ALJ noted that plaintiff had mild restrictions limiting his physical capabilities. *Id.* The ALJ acknowledged plaintiff's statements that he has difficulty in social functioning. *Id.* The ALJ specifically noted plaintiff's anxiety and anger issues that make it "not good" for plaintiff to be around other people. *Id.* The ALJ further noted plaintiff's moderate difficulties regarding concentration, persistence, and pace. *Id.* Specifically, the ALJ pointed to reports of plaintiff's sedation from medications, complaints of anxiety, and hypervigilance. *Id.*

The ALJ did find that plaintiff's medically determinable impairments "could reasonably be expected to cause" his alleged symptoms, but plaintiff's testimony concerning the intensity, persistence, and limiting effects of those impairments was not credible. Tr. 27. The ALJ pointed to plaintiff's work history in making that determination. *Id.* Specifically, the ALJ concluded that plaintiff stopped working for reasons other than his allegedly disabling impairments. *Id.* Plaintiff has not posted any income since 2009. *Id.* Additionally, in a written statement, plaintiff reported that he stopped working on July 1, 2009, which is approximately four and a half years prior to his alleged onset date. *Id.* The ALJ observed that although Plaintiff alleges that they have been unable to work since February 22, 2013, he continued to act as a caregiver for his parents—which is "strong persuasive evidence that [he] is not as limited as he alleges to be." *Id.*

Next, the ALJ acknowledged the severity of plaintiff's gunshot wound. *Id.* The ALJ referred to evidence that following subsequent surgeries, plaintiff's health significantly improved. *Id.* For example, two months after the gunshot-wound surgery, in April 2013, X-ray images showed plaintiff's fixation plate and alignment were unchanged, providing evidence of

early new bone formation. *Id.* Additionally, four months after the surgery, in June 2013, plaintiff reported that he had been doing some weight bearing on his left leg and "was occasionally riding a stationary bike." *Id.*

The ALJ referred to evidence contained in current examinations where the doctor observed that plaintiff had knee motion between 0 and 130 degrees. Tr. 27. The ALJ also cited current medical observations that plaintiff's wounds were "well healed," with updated X-ray images showing plaintiff's left femur to be "uniting with abundant callus formation, intact hardware, and maintained alignment." *Id.* The ALJ gave additional weight to the examining doctor's assessment that plaintiff was "doing well" and that he wanted plaintiff to "start weaning off crutches, and to work hard on strengthening." *Id.*

The ALJ referred to follow-up medical examinations that occurred in June 2014, sixteen months after plaintiff's gunshot injury. *Id.* Those examinations revealed that plaintiff ambulated with a cane although no treatment provider "prescribed an assistive device for ambulation." Tr. 28. The ALJ also gave deference to the examining doctor's observations on plaintiff's physical condition. *Id.* Specifically, that plaintiff "transferred on and off the examination table without difficulty;" and showed "no signs" of ataxia. *Id.* Further, the ALJ cited the examining doctor's observations that Plaintiff: exhibited normal range of motion; had negative spurling and dural root tension tests; exhibited full 5/5 strength and range of motion in both lower extremities; showed no enlargement, tenderness, or laxity in his bilateral knee joints; had normal coordination; and displayed full and equal reflexes. *Id.* Finally, the ALJ noted the examining doctor's observations that plaintiff's memory appeared in tact, and he showed no signs of depression, anxiety, or agitation. *Id.*

The ALJ examined the medications prescribed to plaintiff to treat his pain. Tr. 28. Specifically, the ALJ noted that for treatment, plaintiff was transitioned from Oxycodone to Methadone, had his Neurotin dose increased, was given a prescription for Liboderm ointment, and was ordered to follow up with an orthopedic specialist. *Id.* Additionally, the ALJ noted that plaintiff recently went to his doctor with multiple complaints including left elbow pain, pain in the groin, testicles, left knee, and lower left extremity. *Id.* The ALJ noted that plaintiff's examination revealed tenderness in the "lateral epicondyle region of the left elbow," a swollen left elbow, decreased range of motion in the hip, and that Plaintiff walked with an antalgic gait. *Id.* However, the ALJ also observed that subsequent X-rays revealed "no acute abnormalities." Tr. 29.

The ALJ further observed that from August 2014 to August 2015, plaintiff received many additional X-ray and MRI scans in conjuncture with new complaints of ongoing pain. *Id.* For example, the ALJ referred to a note from plaintiff's doctor dated in May 2015 where plaintiff reported ongoing pain in his lower back and legs. *Id.* An additional examination revealed a spasm and tenderness in his lumbar spine. *Id.*

Thus, the ALJ adequately discussed treatment records spanning the entire time of plaintiff's claim of disability. Having examined the record, this Court finds that the record was not inadequate to allow for proper evaluation of the evidence regarding plaintiff's physical conditions.

Plaintiff also contends that the ALJ failed to properly develop the record regarding his mental health impairments because there is no opinion evidence in the record regarding his limitations. However, the record does not support this claim, as the ALJ explored treatment records pertaining to plaintiff's mental health. For example, the ALJ examined medical records

Page 8 – OPINION AND ORDER

from February 2013, in which Lydia C. Warner ("Ms. Warner"), FNP, referred plaintiff to behavioral health after plaintiff reported having depression and anxiety." Tr. 30. The ALJ also examined Ms. Warner's notes in which plaintiff "admitted a history of heavy alcohol consumption." Tr. 30. The ALJ observed that one month later, in March 2013, plaintiff reported that his anxiety had improved with medication. *Id.* The ALJ further observed that one year after his surgery, in February of 2014, plaintiff underwent alcohol and drug assessments at Clatsop Behavior Healthcare ("CBH") after being arrested for Driving Under the Influence of Intoxicants ("DUII"). Tr. 31.

Additionally, the ALJ observed that, in March of 2014, plaintiff underwent another assessment at CBH, in which a social worker assessed him with "alcohol abuse in remission, anxiety, posttraumatic stress disorder, and depressive disorder." Tr. 31. The ALJ further observed that in October of 2014, plaintiff met with Robert A. Sperry ("Mr. Sperry"), NP. *Id.* In plaintiff, Mr. Sperry endorsed hypervigilance, startle response, panic, nightmares related to being shot by his brother, stress related to caretaking for his mother. *Id.* The ALJ noted Mr. Sperry's objective observations that Plaintiff "showed a depressed mood and anxious affect," but that his thoughts were "logical and goal-oriented." *Id.* The ALJ also observed that in November 2014, plaintiff told Mr. Sperry that "he feels violence is impending as he and his brother have nearly come to blows on several occasions." *Id.* In April 2015, over two years after the gun shot, plaintiff reported to Mr. Sperry that felt improved and was "trying to stay positive." *Id.* Though she gave them limited weight, the ALJ also considered psychological assessments submitted on behalf of DDS from Arthur Lewy, Ph.D., and Bill Hennings, Ph.D, both of whom opined that plaintiff's impairments were non-severe. Tr. 33.

This accounting is not exhaustive, and the ALJ noted many other details relating to plaintiff's mental health. Having examined the record, the Court finds that the record was not inadequate to allow for proper evaluation of the evidence regarding plaintiff's mental health conditions, and the ALJ's determinations were supported by substantial evidence. Absent conflict or ambiguity, the ALJ's duty to develop the record was not triggered, and the ALJ did not fail to meet his burden. *See Thomas v. Barnhart, 278 F.3d 947, 958 (9th Cir. 2002).*

In sum, the ALJ address adequately addressed Plaintiff physical and mental limitations detailed in various documents provided by physical health and mental health professionals. Here, the record is neither so ambiguous nor inadequate as to have necessitated a consultative examination. The record was sufficient to allow for the ALJ's evaluation, and she considered numerous medical records from several sources, incorporating many of them into her decision.

Thus, the ALJ did not commit harmful error by failing to fully develop the record. Further, the ALJ's decision is supported by substantial evidence from the record and is affirmed.

## CONCLUSION

The Commissioner's decision is AFFIRMED and this case is DISMISSED.

IT IS SO ORDERED.

Dated this 30th day of March 2019.

_____
Ann Aiken
United States District Judge